UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PATRIA PAULINO,                                                            Civil Action No.:

               Plaintiff,

      v.                                                                         **COMPLAINT**

SONY MUSIC ENTERTAINMENT,
COLUMBIA RECORDS, RON PERRY, KIMBERLY          **Jury Trial Demanded**
GREENMAN, JENNY SCHECTER, and
ALEXA ABRAMS,

               Defendants.
------------------------------------------------------------------------X

Plaintiff Patria Paulino ("Plaintiff"), by way of Complaint against Sony Music Entertainment, Columbia Records, Ron Perry, Kimberly Greenman, Jenny Schecter, and Alexa Abrams, hereby alleges as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against her former employer for violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Plaintiff was hired as an Executive Assistant for Ron Perry, the Chairman and Chief Executive Officer of Columbia Records. **Although Plaintiff was tasked with screening candidates for the subordinate Administrative Assistant position, she was explicitly told that she could only hire Black candidates for the role.** Nevertheless, in order to conceal its illegal conduct, Defendants' Human Resources department sent Plaintiff a diverse pool of candidates to interview, including Caucasian candidates. **When Plaintiff opposed Defendants' discriminatory hiring process by recommending qualified non-Black candidates,**

**Defendants constructively terminated Plaintiff's employment.** As a Hispanic employee, Plaintiff, herself, was also subjected to discrimination throughout the course of her employment. Despite exemplary qualifications, Plaintiff was labeled as a "**diversity hire**" and was perceived by Ron Perry as less qualified because of her race and treated less favorably than her Caucasian counterparts.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the alleged unlawful employment practices, occurred in this district.

## PARTIES

4. Plaintiff Patria Paulino is a former employee of Defendants and a resident of the state of New Jersey.

5. Plaintiff is Hispanic and of Dominican, Spanish, and Italian national origin.

6. Defendant Sony Music Entertainment is a New York-based recorded music company owned by the Sony Corporation.

7. Defendant Columbia Records is a New York-based record label owned by Sony Music Entertainment.

8. Defendant Sony Music Entertainment and Defendant Columbia Records maintain headquarters located in New York City and are incorporated in the State of Delaware.

9. Defendant Ron Perry ("Perry") was and is, at all relevant times herein, the Chairman and Chief Executive Officer of Columbia Records.

10. Defendant Kimberly Greenman ("Greenman") was and is, at all relevant times herein, the Human Resources Executive for Sony Music Entertainment.

11. Defendant Jenny Schecter ("Schecter") was and is, at all relevant times herein, the Human Resources Director for Sony Music Entertainment.

12. Defendant Alexa Abrams ("Abrams") was and is, at all relevant times herein, the Senior Recruiter for Sony Music Entertainment.

13. Upon information and belief, Defendant Perry, Defendant Greenman, Defendant Schecter, and Defendant Abrams reside outside the state of New Jersey.

14. Defendants Sony Music Entertainment, Columbia Records, Perry, Greenman, Schecter, and Abrams are also herein collectively referred to as "Defendants."

**FACTUAL ALLEGATIONS**

15. On or about November 7, 2022, Plaintiff began working for Defendants Sony Music Entertainment and Columbia Records as an Executive Assistant for Defendant Perry in New York City.

16. Plaintiff was highly qualified for the position and went through a rigorous interview process before she was offered the role. Plaintiff was previously employed at Viacom where she was quickly promoted and worked across several brands including MTV, BET, and Nickelodeon in the digital, celebrity talent, and live events sectors. Thereafter, Plaintiff worked for Madison

Square Garden Entertainment in the VIP hospitality department coordinating experiences for executive leadership and celebrity guests at live music and sporting events.

17. As part of Plaintiff's application process with Defendants, Plaintiff was required to check a box identifying her racial identity. Plaintiff checked the box for "Hispanic."

18. Plaintiff was hired to replace Defendant Perry's former Executive Assistant, Samantha Sachs, who was being promoted to the role of Director of Business Development and A&R (Artists and Repertoire). Ms. Sachs is Caucasian.

19. Prior to Plaintiff's hire, Ariella Gutsko-Sater was the Administrative Assistant to Defendant Perry. Ms. Gutsko-Sater applied for a promotion to the Executive Assistant position but was turned down in favor of Plaintiff.

20. Ms. Gutsko-Sater was subsequently reassigned to another department, leaving a vacancy in the Administrative Assistant position. She was reassigned because Defendants preferred to hire a Black Administrative Assistant in the role to create more diversity in Defendant Perry's office. Ms. Gutsko-Sater is Caucasian.

21. Approximately one month after Plaintiff's hire, Ms. Gutsko-Sater told Plaintiff that she (Plaintiff) was selected for the position because she was a "**diversity hire,**" irrespective of Plaintiff's stellar qualifications. Indeed, Plaintiff was frequently told that Defendant Perry demonstrated a preference for Caucasian employees but needed to have more "color" in his office.

22. Defendants preferred to hire a Black Administrative Assistant for Defendant Perry's office because he (Defendant Perry) had been the subject of multiple racial discrimination complaints by former employees. **Defendants wanted to evade liability and give the appearance that Defendant Perry was not engaged in race-based discrimination by hiring more Black**

**employees, particularly in the lower-level positions of the company.** Multiple employees told Plaintiff that Defendant Perry needed "color in his office," and that he should hire a Black Administrative Assistant to mirror the racial composition of the office of the Chief Executive Officer of Sony Music Entertainment, Rob Stringer.

23. Despite the ongoing complaints of discrimination against him, Defendant Perry would require Plaintiff to complete compliance training for him, in violation of company policy.

24. Although Plaintiff was hired for the Executive Assistant role, Plaintiff was often treated as less qualified for the position because of her Hispanic race and national origin. Plaintiff was also given less independence and decision-making authority than her predecessor - and successor - because of her race and national origin.

25. Defendant Perry would frequently demean, humiliate and criticize Plaintiff without justification. For example, Defendant Perry would often criticize Plaintiff for scheduling issues that were not attributable to her. By way of further example, on one occasion, without any basis, and in order to humiliate Plaintiff, Defendant Perry text messaged Plaintiff that her "anxiety is coming across in the work." On another occasion, in what he described as a "teaching moment," Defendant Perry instructed Plaintiff that the only acceptable responses to him should be: "Yes," "No," or "I will find out." Defendant Perry did not speak to Caucasian employees in this degrading manner.

26. On or about November 29, 2022, within weeks of Plaintiff's hire, Plaintiff attended a Teams videoconference with Defendant Schecter, Defendant Abrams and Ms. Sachs. Plaintiff was explicitly told that she would be responsible for interviewing applicants for the Administrative Assistant role and that the right applicant was someone with both music experience and a **"Person of Color (POC)."**

27. Despite this directive, in order to conceal its illegal conduct, Defendants' HR department sent Plaintiff a diverse pool of candidates to interview, including Caucasian candidates.

28. Although numerous Caucasian candidates were qualified for the position, they were removed from consideration because of their race.

29. For example, on or about December 12, 2022, Plaintiff interviewed an applicant named Jacob, who is Caucasian, for the Administrative Assistant position.  Jacob was qualified for the position and had previously interned for the company under Ms. Sach's leadership. Jacob was not eligible for the position because of his race.

30. Similarly, on or about December 13, 2022, Plaintiff interview another Caucasian applicant, Olivia, who was a strong candidate for the position but was not considered because of her race. In fact, Ms. Sachs personally submitted Olivia's resume.

31. On or about January 18, 2023, Plaintiff interviewed Erik, another Caucasian candidate. Erik was among the most qualified applicants for the position, predominately due to his previous work history, particularly his experience working for the President of another major music label. When Plaintiff notified Ms. Sachs of Erik's qualifications, Ms. Sachs immediately asked Plaintiff via text message, **"[I]s he POC"** and added that his race was **"super important."** *See* **Exhibit A.**

32. On another occasion, Plaintiff was required to list "cons" for a male Caucasian applicant. In text messages to Ms. Sachs, Plaintiff acknowledged that she "**loved him but [was] aware of the [diversity] situation.**" Ms. Sachs instructed Plaintiff to mention the applicant's lack of diversity as a negative for hiring. *See* **Exhibit B.**

33. On another occasion, Plaintiff sent Ms. Sachs a text message about another person who applied for the position but conceded that the applicant **"doesn't fit the box."**  Ms. Sachs replied,

6

"**white I assume.**" Thereafter, Defendant Abrams sent Plaintiff a new candidate that did, in fact, "fit the box." In a written exchange, Defendant Abrams asked Plaintiff to vet a pool of **"strong diverse male talent"** for the Administrative Assistant position.

34. As part of Plaintiff's opposition to Defendants' discriminatory hiring practices, Plaintiff, herself, submitted a Caucasian and Jewish candidate who was highly recommended by Plaintiff's former colleague. However, Plaintiff was not even permitted to interview the applicant. Plaintiff text messaged Ms. Sachs that she wanted to enter the applicants resume for consideration even though Plaintiff understood she was not the **"target"** applicant. In response, Ms. Sachs text messaged Plaintiff, **"We can't hire another white Jewish girl unfortunately."** Uncomfortable with Defendants' hiring practices, Plaintiff attempted to laugh off the blatant discrimination. *See* **Exhibit C.**

35. The above are just some examples of more than a dozen candidates that were not selected for hire because of their race.

36. Although Plaintiff was initially told that the applicant had to be a POC, Ms. Sachs later qualified that the search was actually limited to Black employees.

37. **Nevertheless, Plaintiff continued to recommend qualified Caucasian applicants in opposition to Defendants' discriminatory directive.**

38. For example, on or about February 8, 2023, Plaintiff attended a Teams videoconference with Defendant Abrams, Defendant Schecter, Ms. Sachs and another assistant. During the meeting, Plaintiff listed a number of applicants that she believed to be qualified, including Black and Caucasian applicants. However, when Plaintiff named the Caucasian applicants, Ms. Sachs interrupted Plaintiff and said, **"They can't be hired because they're not Black."**

Acknowledging that Defendants' hiring policy was discriminatory, Defendant Schecter replied, **"My HR ears can't hear this."**

39. Indeed, during multiple conversations where Ms. Sachs discussed hiring a Black employee for the Administrative Assistant position, Defendant Schecter would say, **"I'm not hearing this"** or words to that effect.

40. Over the course of her employment, Plaintiff was forced to interview and review application submissions for numerous non-Black applicants as part of Defendants' efforts to conceal their discriminatory conduct. These sham interviews, *which took months*, coupled with the fact that Defendants would not fill the Administrative Assistant vacancy, left Plaintiff working extremely long hours to fulfill her job responsibilities. Plaintiff was often required to work 80 hours or more per week.

41. In or around early March 2023, after eliminating numerous qualified Caucasian applicants, two Black candidates were presented to Defendant Perry for consideration.

42. On or about March 21, 2023, Plaintiff attended a meeting with Defendant Greenman. According to Defendant Greenman, the meeting was to "check in" on Plaintiff as a new employee. At the onset of the meeting, Plaintiff told Defendant Greenman that Plaintiff's position would be more manageable if the company filled the Administrative Assistant vacancy. Without warning, and in retaliation for Plaintiff's opposition to Defendants' discriminatory hiring practices, Defendant Greenman abruptly responded that Defendant Perry felt that Plaintiff "was not really working out" and suggested that Plaintiff should resign. Plaintiff reiterated that she was doing the job alone without an Administrative Assistant and that she was working long hours to successfully complete her job duties. Defendant Greenman nevertheless instructed Plaintiff to contact her on the following day to render a decision on her resignation.

43. On or about March 22, 2023, under pressure from Defendant Greenman, Plaintiff complied and tendered her resignation to Defendant Greenman.  In response, Defendant Greenman told Plaintiff that she should communicate the resignation to Defendant Perry directly. However, Defendant Greenman explicitly told Plaintiff not to disclose their conversation on the preceding day to Defendant Perry.

44. That same day, Plaintiff told Defendant Perry that she was resigning from her position.  Despite Defendant Greenman's directive, Plaintiff disclosed the content of her conversation with Defendant Greenman; namely, that Defendant Perry was unhappy with Plaintiff's performance. Defendant Perry vehemently denied that he had communicated dissatisfaction with Plaintiff's performance.

45. Almost immediately, Defendant Perry offered Plaintiff's position to Ms. Gutsko-Sater, which she accepted.  Unlike Plaintiff, Ms. Gutsko-Sater was granted more independence and decision-making authority because she was perceived as more capable because of her race and national origin.

46. Within days of Plaintiff's departure, a Black applicant was hired to fill the Administrative Assistant position.

47. During Plaintiff's exit interview with HR, Plaintiff told Defendant Schecter that her job was made difficult because she was unable to fill the Administrative Assistant role, despite proposing highly qualified applicants.  Defendant Schecter became visibly uncomfortable and steered the conversation away from Defendants' discriminatory hiring practices.  Defendant Schecter then reminded Plaintiff that she had signed an NDA (non-disclosure agreement) to deter Plaintiff from exposing Defendants' discriminatory hiring practices.

48. Defendants retaliated against Plaintiff, including constructively terminating her employment, because she opposed Defendants' discriminatory hiring practices.

49. Defendants created intolerable working conditions by requiring Plaintiff to participate in the company's discriminatory hiring practices and by coercing Plaintiff into submitting her resignation.

50. Defendants discriminated against Plaintiff because of her race and national origin.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, severance pay, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendants.

## AS A FIRST CAUSE OF ACTION
## UNDER THE NYCHRL
## **DISCRIMINATION**

53. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

54. Pursuant to N.Y.C. Admin. Code § 8-107(1), it is an unlawful discriminatory practice for an employer "to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment" on the basis of race or national origin.

55. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race and national origin.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS A SECOND CAUSE OF ACTION
### UNDER THE NYCHRL
### **RETALIATION**

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

58. N.Y.C. Admin. Code § 8-107(7) provides: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has…opposed any practice forbidden under this chapter."

59. Defendants engaged in unlawful employment practices prohibited by the NYCHRL by retaliating and otherwise discriminating against the Plaintiff because of her opposition to Defendants' unlawful employment practices, including but not limited to, constructively terminating her employment.

60. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS A THIRD CAUSE OF ACTION
### UNDER THE NYCHRL
### <u>AIDING & ABETTING</u>

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

62. N.Y.C. Admin. Code §8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

63. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

64. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS A FOURTH CAUSE OF ACTION
### UNDER THE NYSHRL
### <u>DISCRIMINATION</u>

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

66. Pursuant to N.Y. Exec. Law §296(1)(a), it is an unlawful discriminatory practice for an employer "to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" on the basis of race or national origin.

67. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race and national origin.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS A FIFTH CAUSE OF ACTION
### UNDER THE NYSHRL
### RETALIATION

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. N.Y. Exec. Law §296(7) provides that it shall be an unlawful discriminatory practice "[f]or any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

71. Defendants engaged in unlawful employment practices prohibited by the NYSHRL by retaliating and otherwise discriminating against the Plaintiff because of her opposition to Defendants' unlawful employment practices, including but not limited to, constructively terminating her employment.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### AS A SIXTH CAUSE OF ACTION
### UNDER THE NYSHRL
### AIDING & ABETTING

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if same were set forth herein fully at length.

74. N.Y. Exec. Law §296(6) provides: "It shall be an unlawful discriminatory practice for any

person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

75. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling, and coercing the discriminatory conduct.

76. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaratory judgment that the employment practices of Defendants complained of herein violate the NYSHRL and the NYCHRL;

B. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages, bonuses, and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful discharge and to otherwise make Plaintiff whole for any losses suffered as a result of Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation;

D. Awarding Plaintiff punitive damages in an amount to be determined at trial;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

F. Awarding prejudgment interest on all amounts due;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 28, 2023

                                       **SHNAYDER LAW LLC**
                                       *Attorneys for Plaintiff*

                         By:  */s/ Erica L. Shnayder*
                                       Erica L. Shnayder, Esq.
                                       89 Headquarters Plaza, Suite 1421
                                       Morristown, NJ 07960
                                       (973) 714-1515
                                       erica@eshnayderlaw.com